UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

J & J SPORTS PRODUCTIONS, INC.,       )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )    Case No. 1:10-cv-01371 (TSE/IDD)
                                      )
BURUCA BROTHER'S VIRGINIA, INC.,      )
d/b/a EL PARAISO II,                  )
                                      )
          Defendant.                  )
                                      )

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment against Buruca Brother's Virginia, Inc., doing business as El Paraiso II ("Defendant"), pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2). (Dkt. No. 11.)  After a licensed attorney for the Defendant failed to appear at the May 13, 2011 hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.  Upon consideration of the Complaint, the Plaintiff's Motion for Default Judgment, and the supporting affidavits thereto, the undersigned Magistrate Judge recommends that the Plaintiff's motion be GRANTED in part and DENIED in part.

## I.    INTRODUCTION

On December 3, 2010, J & J Sports Productions, Inc. ("Plaintiff" or "JJSP") filed a Complaint seeking relief under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Title 47 U.S.C. § 553 provides relief to a plaintiff

who is injured by a person's unauthorized reception of cable services. A person violates
§ 605 when he engages in the unauthorized publication or use of communications; and a
plaintiff injured by such violation may be entitled to actual damages and lost profits, or
statutory damages. 47 U.S.C. § 605. The Plaintiff in this case alleges that on December
6, 2008, Defendant unlawfully intercepted, received, and exhibited a closed-circuit
telecast of The Dream Match: *Oscar De La Hoya v. Manny Paquiao*, Welterweight
Championship Fight Program, including preliminary events (collectively referred to as
the "Event"). (Compl. ¶¶ 6, 13.) Plaintiff seeks default judgment against Defendant and
requests that the Court award Plaintiff statutory damages, enhanced damages, as well as
litigation costs and attorney's fees. (Pl.'s Mem. Supp. Default J. 4.)

### A. Jurisdiction and Venue

FRCP 55 provides for the entry of default judgment when "a party against whom
a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed
R. Civ. P. 55(a). A defendant in default admits the factual allegations in the complaint.
Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages
– is admitted if a responsive pleading is required and the allegation is not denied."); *see
Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006) (holding
that well-pleaded statements of fact in a complaint are deemed admitted when a
defendant fails to answer or otherwise respond), *GlobalSantaFe Corp. v.
Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts
alleged in the complaint are deemed admitted and the appropriate inquiry is whether the
facts alleged state a claim"). The court must have both subject matter jurisdiction over

the case and personal jurisdiction over a defaulting party before it can render a default judgment against it.

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because this case arises under the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. ¶¶ 1, 2.) The Court also has personal jurisdiction over the Defendant because the Defendant is incorporated in the Commonwealth of Virginia and maintains a principal place of business at 516 A & B South Van Dorn Street, Alexandria, VA 22304, which is located within this jurisdiction. (*Id.*; Pl.'s Mem. Supp. Default J. 1.)

In addition to subject matter jurisdiction, this Court must be the proper venue for this action. 28 U.S.C. § 1391. Venue is proper in this case, pursuant to 28 U.S.C. § 1391 (b), because it involves a federal question. In addition, Plaintiff's claims arise out of events that occurred in this district, and Defendant resides here. 28 U.S.C. § 1391(c)

**B. Service of Process**

Under FRCP 4(h), service upon a corporation, partnership or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1) of that rule, or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Subdivision (e)(1) provides that service may be achieved "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Fed. R. Civ. P. 4(e)(1). Thus, service is proper if it is executed according to Virginia law.

3

On March 3, 2011, a private process server delivered a copy of the Summons and Complaint to Norma J. Green, an individual authorized to accept civil process for the Defendant's Registered Agent, Richard M. Alvey ("Mr. Alvey" or "Registered Agent"), at the address on record with the State Corporation Commission. (Dkt. No. 5; Pl.'s Mem. Supp. Default J. 2.) Based on the proof of service filed with this Court, the undersigned Magistrate Judge finds that the Defendant was properly served under Virginia law.

### C. Grounds for Default

Plaintiff filed the Complaint on December 3, 2010. (Dkt. No. 1.) Defendant has failed to appear, answer, or file a responsive pleading in this matter. On April 4, 2011, Plaintiff filed a Request for Entry of Default with the Clerk's Office. (Dkt. No. 6.) The Clerk entered default against Defendant on April 5, 2011. (Dkt. No. 7.) On April 25, 2011, Plaintiff filed a Motion for Default Judgment, and on May 13, 2011, the Court conducted a hearing on Plaintiff's motion. (Dkt. Nos. 9, 14.) When a representative for the defaulting Defendant failed to appear at the hearing, the Court took this matter under advisement to issue this Report and Recommendation.

## II.   **FINDINGS OF FACT**

Upon a full review of the pleadings,[1] the undersigned Magistrate Judge finds that the Plaintiff has established the following facts.

Plaintiff is a corporation organized and existing under the laws of California, with its principal place of business in Campbell, California. (Compl. ¶ 4.) Plaintiff paid substantial fees to become a party to a closed-circuit television license agreement

---

[1] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Default Judgment (Dkt. No. 9), Plaintiff's Memorandum in Support of its Motion for Default Judgment (Dkt. No. 10), the declaration in support thereof (Bucci Declaration, April 25, 2011.), Plaintiff's Affidavit in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 10-2), and the Investigator's Affidavit (Dkt. No. 10-3).

("License Agreement") to exhibit the closed-circuit telecast of The Dream Match: *Oscar De La Hoya v. Manny Paquiao*, Welterweight Championship Fight Program. (Compl. ¶6; Joseph M. Gagliardi's Affidavit ¶ 3, April 18, 2011.) Through its License Agreement, Plaintiff acquired the exclusive right to distribute the Event. (Compl. ¶¶ 6, 7; Gagliardi's Aff. ¶ 3.)

The closed-circuit broadcast of the Event was not intended for use by the general public. (Compl. ¶ 8.) Therefore, any business in Virginia seeking to show the Event was required to pay Plaintiff for the rights to broadcast the Event. The transmission of the Event was electronically coded and had to be decoded with electronic equipment in order for a proper signal to be received and televised by an establishment. (Compl. ¶ 10.) Once an establishment contracted with the Plaintiff, it was able to decipher the code or receive the appropriate satellite coordinates to televise the Event. (Compl. ¶ 12.)

With the advent of pay-per-view programming, Plaintiff began experiencing serious erosion in the sales of its proprietary programming. (Gagliardi's Aff. ¶ 4.) Plaintiff learned that this erosion was a result of rampant piracy and embarked upon a nationwide program to police its signals for the purpose of identifying and prosecuting commercial establishments that pirate its programming. (Gagliardi's Aff. ¶ 5.) Specifically, Plaintiff retained auditors and law enforcement personnel to detect and identify signal pirates. (Gagliardi's Aff. ¶ 6.) To ensure that only illegal locations were targeted by auditors, Plaintiff compiled a confidential list of authorized and legal customers, who paid the required license fee to broadcast the program. (*Id.*)

When an establishment contracts with Plaintiff to broadcast the exclusive events, the establishment is given a descrambling device which decodes the reception of a pay-

5

per-view broadcast. (Compl. ¶ 12.) Plaintiff has shown that such transmissions of events are electronically coded or "scrambled" so that it becomes impossible to exhibit the events without purchase or illegal interception. (Compl. ¶¶ 10-12; Gagliardi's Aff. ¶ 9.)

On December 6, 2008, during the broadcast of the Event, John TerBush ("Mr. TerBush"), an investigator retained by Plaintiff, entered the Defendant's establishment. (John TerBush's Affidavit, December 9, 2008.) Mr. TerBush noticed that the Defendant's establishment was exhibiting the match without the Plaintiff's permission. (*Id.*) Mr. TerBush counted the number of people in the establishment and submitted an affidavit based on his findings. (*Id.*) Based upon Mr. TerBush's investigation, the Plaintiff concludes that the Defendant intercepted and/or received the interstate communication of the Event and enabled up to 21 patrons to view the Event without a license or approval from the Plaintiff. (Compl. ¶¶ 11, 13.) Therefore, the Plaintiff claims that the Defendant avoided lawful payment to the Plaintiff by misappropriating the Plaintiff's licensed exhibition of the Event and infringing upon the Plaintiff's exclusive rights to distribute the Event. (Compl. ¶ 14.)

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

The Plaintiff alleges that this case concerns the theft and re-transmission of a pay-per-view event. (Pl.'s Mem. Supp. Default J. 2.) The Defendant purportedly intercepted, received, published, divulged, displayed, and/or exhibited the Event for purposes of direct or indirect commercial advantage, in violation of 47 U.S.C. §§ 553 and 605. Thus, the Plaintiff moves this Court to enter default judgment against the Defendant and award the following amounts in damages to Plaintiff: $10,000 in statutory damages, $15,000 in

enhanced statutory damages due to willfulness, and reasonable attorney's fees and costs in the amount of $3,284.26.[2]

As previously stated, a defendant in default admits the facts in the complaint by virtue of its failure to deny them. Fed. R. Civ. P. 55. Nevertheless, in issuing this Report and Recommendation, the undersigned Magistrate Judge must analyze Plaintiff's claims in accordance with the standards under FRCP 12(b)(6) to ensure that the Complaint contains plausible claims upon which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss.)

### A. *Violation of 47 U.S.C. §§ 553 and 605*

The Complaint sets forth claims for unauthorized reception of cable service and unauthorized publication or use of radio and satellite communications under 47 U.S.C. §§ 553 and 605, respectively. (Compl. ¶¶ 12, 13.) Sections 553 and 605 were enacted as a part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934. Title 47 U.S.C. § 553 provides, in relevant part that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Furthermore, the Communications Act of 1934, as amended, 47 U.S.C. § 605 provides, in relevant part that:

> [N]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information

---

[2] Plaintiff's Complaint requests $100,000.00 in enhanced statutory damages. However, at the May 13, 2011 hearing, Plaintiff amended his request and now seeks $15,000.00 in enhanced damages.

therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge, or publish the existence, contents, substance, purport, effect, or meaning so such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto . . .

47 U.S.C. § 605(a).

When programming is transmitted or intercepted over both cable and satellite mediums, both §§ 553 and 605 apply. *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 130-33 (2d Cir. 1996) (noting that § 553 "applies to any transmissions via cable, whether or not they originate as radio transmission" and 605 applies to "the interception of cable-borne, as well as over the air" broadcasts).

Plaintiff obtained an exclusive license agreement to exhibit closed-circuit telecasts of the Event in the Commonwealth of Virginia. As a result, Plaintiff paid substantial fees to acquire rights to distribute closed-circuit broadcasting for commercial gain. These closed-circuit broadcasts are not intended for the use of the general public unless an establishment has paid a fee to Plaintiff and received contractual authorization to broadcast the closed-circuit programs, which the Defendant failed to pay to plaintiff. (Compl. ¶ 8.)

Accordingly, Plaintiff's Complaint alleges sufficient facts to support a plausible claim that the Defendant intercepted and/or received, without authorization, the interstate communication of Plaintiff's Event and divulged such communication to patrons of El Paraiso II Restaurant. In addition, Plaintiff has also alleged facts to support its claim that Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon

Plaintiff's exclusive rights to distribute the Event. Therefore, Plaintiff has properly pled claims under 47 U.S.C. §§ 553 and 605.

### B. *Statutory Damages*

Both Section 553 and Section 605 allow Plaintiff to recover either actual damages and lost profits, or statutory damages. 47 U.S.C. §553(c)(3)(A); 47 U.S.C. §605(e)(3)(C)(i)(I). Although Plaintiff has set forth the elements of liability under both Sections 553 and 605, recovery under both sections is improper. *See Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, 1184 (D. Colo. 2008); *see also Time Warner Cable of N.Y.C. v. Sanchez*, 2003 U.S. Dist. LEXIS 12954, *3 (S.D.N.Y. July 8, 2003). Plaintiff has opted to seek statutory damages under 47 U.S.C. § 605.[3]

According to § 605(E)(3)(C)(i)(II), an aggrieved party may recover "statutory damages for each violation . . . in a sum of not less than $1,000.00 or more than $10,000.00." In determining the amount of damages that can be imposed for each violation, § 605 leaves the decision within the sound discretion of the court. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (including the language that the aggrieved party may receive damages as the "court considers just").

Plaintiff argues that it is entitled to maximum statutory damages in the amount of $10,000 for Defendant's interception and exhibition of the Event. (Compl. ¶¶ 31, 32.) Courts have employed two general approaches to calculating statutory damages. The courts have based their damage calculations on either the number of patrons in the establishment during the illegal broadcast or a flat damage amount. *See Joe Hand Promotions, Inc. v. Bougie, Inc.*, 2010 WL 1790973, *5 (E.D. Va. April 12, 2010)

---

[3] While Plaintiff's Complaint does not make clear under which section Plaintiff seeks statutory damages, at the May 13, 2011 hearing, Plaintiff clarified that it did not seek double recovery and that it would pursue damages under 47 U.S.C. § 605.

(multiplying the number of customers present by a reasonable rate of $100.00 per customer); *Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc.*, 2010 WL 5141768 (D.S.C. Oct. 1, 2010) (awarding five times the license fee for the program); *Kingvision Pay-Per-View*, 544 F.Supp.2d at 1184 (awarding a flat amount of $5,000.00).

Plaintiff alleges that based on the size and maximum patronage of the restaurant, it suffered actual damages in the amount of $2,200 for Defendant's violation of § 605. (Pl.'s Mem. Supp. Default J. 4.) The sub-license fees Plaintiff charges to commercial establishments legally purchasing broadcast rights varies based on the capacity of the establishment and the event being licensed. (Gagliardi's Aff. ¶ 8.). Plaintiff charged an establishment with capacity for 0-100 patrons $2,200 to display the Event. (Gagliardi's Aff. ¶ 8, Exh. 1.) However, Plaintiff seeks an award of statutory damages in excess of $2,200 in order to deter further signal piracy. (Pl.'s Mem. Supp. Default J. 4.)

Through its investigator's report, Plaintiff has demonstrated that Defendant's restaurant has a capacity of 60 people but an average of 19 patrons observed the unauthorized broadcast of Plaintiff's Event. (TerBush's Aff 2.) Because Plaintiff's sub-licensing fee is based on the capacity of the venue, an award per customer would not be appropriate in this instance and would not deter future unlawful conduct. Based on the information provided by the Plaintiff from which the Court can calculate damages, the undersigned Magistrate Judge finds that the appropriate manner by which to calculate statutory damages is to award a flat amount. Therefore, the Defendant should be ordered to pay statutory damages to the Plaintiff in the amount of $2,200.00.

## C. *Enhanced Damages*

Where a violation is "committed willfully and for purposes of commercial advantage or private gain," the court may increase the award of damages by an amount of not more than $100,000.00 for each violation. 47 U.S.C. 605(e)(3)(C)(ii). As previously noted, Plaintiff amended its request for enhanced damages and now seeks an award of $15,000.00 in enhanced damages.

Defendant's violation of § 605 occurred in a restaurant, and therefore it was committed in a commercial establishment and was committed for purposes of direct or indirect commercial advantage. The pleadings make clear that Defendant's signal interception is not one that can occur accidentally or innocently. "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999). Therefore, Plaintiff is entitled to enhanced damages.

Courts have evaluated the appropriate amount of enhanced damages by assessing factors such as "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; and defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F.Supp.2d 375, 383 (E.D.N.Y. 2008).

Plaintiff argues that signal piracy is *per se* intentional, because it cannot occur without the willful and intentional modification of electronic equipment, the removal of devices designed to prevent unauthorized exhibition, or other willful acts. (Gagliardi's Aff. ¶ 13.) Plaintiff states that it has lost several millions of dollars due to signal piracy,

11

and the widespread nature of the piracy problem has resulted in higher costs of services to lawful commercial and residential cable and satellite customers. (Gagliardi's Aff. ¶ 11.)

Defendant's establishment only attracted enough patrons to fill, at most, only a third of its maximum capacity. Furthermore, Plaintiff has not shown that the Defendant specifically promoted its establishment as a venue to broadcast the Event, or that Defendant significantly benefitted from the broadcast. Plaintiff also has not averred that the Defendant is a repeat offender. Mr. TerBush's Affidavit further notes that Defendant did not charge patrons a fee to enter Defendant's establishment, and there is no evidence that Defendant charged a premium for food or drinks. Since whatever profits Defendant reaped from its violation were likely nominal, an award of $10,000 in enhanced damages should be sufficient to deter the Defendant from repeating its conduct. Accordingly, the undersigned Magistrate Judge finds that $2,200 in statutory damages and $10,00 in enhanced damages compensates Plaintiff and serves as a deterrent to future signal piracy by the Defendant and others.

### D. *Attorney's Fees and Costs*

Title 47 U.S.C. 605(e)(3)(B)(iii) allows the prevailing aggrieved party to recover full costs, including reasonable attorney's fees. In support of this request, Plaintiff submitted the Declaration of Scott Bucci, detailing the work performed, hours expended, and the total amount to be paid for his services to the Plaintiff in connection with this matter. (Bucci Decl.) Mr. Bucci declares that his firm expended a total of 15.6 hours of attorney time at rates of $250.00 per hour and $160.00 per hour, reflecting, among other things, drafting of pleadings filed with the court, legal research, and correspondence with

the client. (*Id.*) Mr. Bucci also declares that his firm expended a total of 4 hours of paralegal time at the rate of $90.00 per hour, reflecting, among other things, correspondence with a process server and with the Clerk of the Court. (*Id.*) Plaintiff also seeks $410.26 in costs representing the $350.00 filing fee, $44.00 in subpoena fees, and $16.26 in delivery and other fees. (*Id.*)

The undersigned Magistrate Judge finds that the requested attorney's fees and costs are reasonable compensation for the time expended to enforce Plaintiff's rights and recommends an award of $3,284.26.

## IV.   **RECOMMENDATION**

For the reasons set forth above, the undersigned Magistrate Judge recommends that the Plaintiff's Motion for Default Judgment be granted in part and denied in part. The motion should be granted in favor of J & J Sports Productions, Inc. as to the entry of default judgment against Buruca Brother's Virginia, Inc., trading as El Paraiso II, for violations of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. The Plaintiff's motion should be denied as to the amount of statutory and enhanced damages requested. The undersigned Magistrate Judge recommends that an Order be entered directing the Defendant to pay damages as follows: statutory damages in the amount of $2,200, pursuant to 47 U.S.C. § 605(e)(2)(C)(i)(II); and enhanced damages in the amount of $10,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Lastly, the undersigned advises that Plaintiff be awarded attorney's fees and costs in the amount of $3,284.26. Accordingly, Plaintiff should be awarded damages in the total amount of $15,484.26.

## V. **NOTICE**

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and defendant at the following address and e-mail:

> Buruca Brother's Virginia Inc.
> d/b/a El Paraiso II
> 516 A & B South Van Dorn Street
> Alexandria, VA 22304

                                             /s/
                                    ──────────────────────────
                                    Ivan D. Davis
                                    United States Magistrate Judge

August 26, 2011
Alexandria, Virginia